Rutledge, Ch. J.
The question in this case is, whether the 7th clause of the “ act for amending the circuit court act,” which obliges the sheriffs to turn over to the sue-ceeding sheriffs, all executions, whereon an actual sale of the property, levied by virtue of such executions, has not been made, extends to the late sheriffs, and particularly the sheriff of Charleston district. On the fullest consideration, I am of opinion that the construction contended for by the plaintiff, is not warranted by the intention of the legislature, or by the words of the act. By the preamble, the legisla» ture declare, that the several circuit court acts require amendment; they therefore proceeded to make the several amendments which appeared necessary. Amongst others, it appeared necessary to make an alteration in the bounds of some of the old districts, and to create two other district's. This is done. The old names of Charleston, Georgetown, Cherazv, Beaufort, Orangeburgh, Camden, and Ninety-six, it is true, are retained ; but the bounds of several of the old districts are altered. Pinckney and Washington are 'created; and the bounds of every district are -established by the Sd clause of this law. No reference-, is had to former bouhdaries* nor in this respect, to any,former law. As a necessary conséqtíence'of creating.- new districts, sheriffs for them were to be appointed. The 14th section of the law declares, that they shall be immediately appointed ; and they were accordingly «appointed. Sheriffs were also appointed for all the other districts established by thqt *197 act. By the old law, a sheriff going out of office, was obliged to deliver to his successor, all writs' and processes unexe-cuted, and he was obliged to execute them. This did not relate to executions. Among other amendments which the old law required, the legislature considered that a sheriff on going out of office, should be obliged to deliver to his successor, not only writs and processes unexecuted, as the former law required ; but executions on which sales had not actually been made. The 7th section, therefore, says, that the sheriffs of each of the said districts shall be obliged, at the expiration of his office, to turn over to the succeeding sheriff, all such executions, &c. To what do the words “ said districts,” refer ? Manifestly to the districts of Charleston, Georgetoxvn, Cheraw, Beaufort, Orangeburgh, Camden, Ninety-six, Pinckney, and Washington; and to those districts established and described by this laxv. It is therefore evident, in my opinion, that the act had no retrospect and can operate only upon the present sheriff, and his successors.
Burke, J.
It is admitted that on .the 19th of February last, the new sheriff was elected under the' new state constitution : and that after this election, but on the same day, the present act was ratified by both houses, and passed into a law. If we consider the election of the new sheriff — the displacing (of course) of the old — and the passing of this act: viewing these three circumstances in the order of time in which they respectively happened ; we shall find that the business of the two sheriffs was ended, and their situation fixed and settled before the law passed. Prior to its ratification, the new sheriff’s right to perform the service of the sheriff’s office for two years, and to receive its fees and emoluments, was fully vested in him, exclusively of any other person. The right of the old sheriff, to either, ceased : except as to the few cases of levies made, which the old laws and usage of the office, had referred to be executed by the old sheriff. And in this situation was the old sheriff and the new, at one moment, on the 19th of February; and in *198 a few moments, or hours afterwards, on the same day, the act referred to, was ratified. These are the facts and circumstances of this case ; which, in my opinion, turns upon one point: that is, the period or moment of time when the operation of the act commenced. For if it commenced before the election of the new sheriff, and displacing of the old one, there would be ground to argue that it would be binding on the old sheriff, though he was not expressly mentioned in the act. But if the law began to have effect only from the ratification, then it is much clearer, that the old sheriff’s right to go on with the executions levied, is not at all touched or affected by it. The first day of the session, has been argued as the date of its commencement. This doctrine though laid down by several lawyers, is not worthy of a serious refutation. Even in England, there is as little of law or truth in it as there is in this country. When ncs particular time therefore, is mentioned in the act, for its beginning to take effect, the beginning of its existence is the rational and natural time, and not the first day of the session. The reason and nature of the thing fixes it. But if this were not the case, the late state constitution settles the point, and fixes a day for this and all other acts of the legislature. It is the 16th section, art. 1. and the clause is worthy of commendation, as it settles a point before disputed, and fixes a time, prior to which our future laws cannot operate, blit obliged them to commence in futurity, and operate on future events — to look forwards and not backwards. In short, it prevents retrospective and ex post facto laws. In the case before us, its efficacy beginning from the moment of its ratification, it cannot be so construed as to have a retrospect, and devest rights that were vested in the old sheriff, under the old laws and constitution of the state. It does not appear to have been the intent of the legislature to devest such rights, or they would have bound the old sheriff by express words. But the act has done no such thing 5 having been passed, and beginning to operate after the election of the new sheriff. It left both the new and the old sheriff as it found them- — the one out of office, but invested by *199 the old law, with a right of proceeding with levies already made, and of receiving the fees and emoluments thereon— the other in his office, entitled to the emoluments of his la-bour ; but gave him not the fruits of his predecessor’s $ whereas the contrary construction makes the law to do a manifest wrong by devesting the old sheriff of a common law right, sanctioned by the constitution and the laws, under which he accepted his commission. The cases and authorities quoted in the course of the arguments, do not, I think, generally apply in this, which I take to be a new case. The case of Gilmore v. Executors of Shooter, 2 Mod. 310. comes nearer than any of them to the present. There judgment was given for the plaintiff, by the court, on the very principle on which I ground my opinion; because to use the words of the reporter, it cannot be presumed that the statute 29 Car. II. c. 3. was to have a retrospect, so as to take away a right of action, which the plaintiff was entitled to, before the time of its commencement, I do not think it is against my opinion, if I shall be thought to make fractions of a day against the maxim. I only consult the order and priority of time in which the circumstances which governed the case happened — a thing which may possibly arise in other cases. I shall put one case that may arise out of the act which abolishes the right of primogeniture. Supposing that act passed in the evening, and on the morning of that clay, a father should have died, leaving several sons and a landed estate. Here would arise a question pretty similar to the present, relating to the order of time in which the death happened, the descent fell, and the act was ratified. I do not say how this matter would be determined ; I only state it to shew, that this and other cases may require a fraction of a day to be made, in order to fix the relation which certain facts and statutes bear to one another, as in the case before us.
It has been urged in favour of the plaintiff, that the old sheriff having been elected in March, his time of official service was two years, under the old constitution; and did not expire, nor was the new sheriff in office until, March *200 next, after the ratification of this act. A.nd they argue,, therefore, that the act overtakes and binds the old sheriff. In answer to this, it is sufficient to observe, that the old constitution was entirely annihilated and repealed by the new, on the meeting and sitting of the legislature under the latter. The very election of the new sheriff and other rotation officers, which took place, is contemplated — nay, mentioned by the 8th clause of the additional articles ; so that the old state constitution did not exist when the election of sheriff took place. As to the unconstitutionality of ex pest facto laws, there is no occasion here to refer to or apply them. Nor can I say what turn the case would take, if the legislature had ratified the act prior to the election of the new sheriff. Even then I should respect the right of the old sheriff, and be apt to consider him as holding his office and the emoluments arising from it, by virtue of a contract between him and the state, under the laws and old constitution; and I believe my judgment should be for not devesting him of that right, and conferring it upon another, by any construction drawn from implication.
Bay, J.
I have the misfortune to differ from my brethren on this question, and shall therefore, deliver my opinion and reasons at large. The principal grounds relied on for the defendant, are the following, viz. 1. That, by law, he was not obliged to turn over executions — for executions being an entire thing, he who begins must end theim 2. That the late law can never be so construed, as to affect him. 3.. That if it should, it would be an ex post facto law, and therefore void. 4. That the defendant is entitled to half fees, at any rate. In order to have a proper clew to this question, I shall consider, 1. What the law was before the act passed, with regard to sheriffs. 2. What the mis-chiefs were, which this act meant to guard against, between the old and new ones. 3. What is the extent and nature of the remedy provided by it.
1. With regard to the first point, I shall begin by ob« serving on the common law. All sheriffs were formerly *201 appointed by the king, durante bene plácito ; were removable by him : and there was no fixed time for their conti-iJm ... nuance in office, as we have by our constitution. "When a new sheriff was appointed, and had taken the oaths of office, allegiance, &c. a writ issued^ called a writ de exonerate officii, which discharged the old sheriff. Then another writ issued to the old sheriff, for delivery of his county rolls and writs, &c» to the new sheriff. The next thing was, that the new sheriff, at or before the first county court, was to take Over, from his predecessor, all his prisoners and writs, pre« cisely by view, and by indenture made between them, whereas in all the causes which the old sheriff had, against every prisoner, was .particularly set forth, or else the new sheriff was not chargeable with them. Compl. Shff. 11. 3 Cro. Rep. 72. IVerbic’s case. So far, then, with regard to the appoiutment of new sheriffs, and discharge of old ones. The republican- principles of our states made them elective, and fixed the period of continuance in office. But it was clear, by the common law, that the old sheriff of a county was still sheriff-\ and continued in office Until the new sheriff was sworn, although he was chosen before ; u for it is u the oath that doth complete him in office.” Compl. Shff. 11. Cro. Eliz. 12. Moore, 188. 364. 3 Rep. 72. The 20 Geo. II. c. 37. more particularly prescribes the mode of turning over writs and process, from old to new sheriffs, by indenture and schedule. But this was not introductory oi any new law, but only declaratory of the old ; with this only difference, that by the common law it was to he done at the next county court, but by this act it was to be done at the expiration of office, and he was made liable to the damage if he did not. The 11th clause of die old circuit court act, passed in 1769, is a transcript of the act of Geo. 11. c. 37. except as to the second clause, which in that act says, that! the sheriff shall not be liable to be called on for return of any process, unless required within six mon-hs after his office expires. Nothing, however, either in the statute of Geo. II. or in the 11th clause of the old circuit court act of 17C>9;< *202 related to executions. They depended on the principles of the common law in Englandand do so still: and so did they here, until the passing of the late act. By the common law, an execution is an entire thing, and he who begins musí end it. If, upon a fieri facias, a sheriff seize goods, he re-' turns that they remain in his hands, pro dejecta emptorum? and he is removed ; yet he, and not the new sheriff, is te proceed to the execution. lie acquires a property in the goods, by the seizure which devests the owner. He may maintain trespass or trover for them : they are in him by operation of law, until sale is made. This, then, opens the door for the application of the law, and all the authorities which were cited with so much ingenuity from Bacon, Salk,, Halt, 6 Mod. Cro. Jac. 4 Inst, and all the authorities which went to establish this point, and which were so ably com» merited on by the counsel, in the course of the argument. It is good law in England at this day, and was so here until a late day, to wit, until altered by our late act of assembly« Thus far, with regard to the law, before the passing of the last circuit court act, which brings me to consider,
2dly. What were the mischiefs intended to be guarded against by this act. And here I must observe, that they are not particularly mentioned or recited in this act, because it embraces a great variety of objects. It alters the times of holding the courts of justice in this state ;• it ’ creates new districts, regulates the manner of proceeding in some degree, and introduces a number of new and excellent regulations, which were unknown in former laws. And, among other things, it prescribes and regulates the mode of turning over unfinished business, from the old to the new she-3 riffs. It only recites, generally, “ that the several circuit 5£ court acts, in this state, require amendment.” The inconveniences under each head, are not mentioned, but must be collected from the general complaints of the people, and the difficulties which occurred in the course of conducting business, and which gave rise to the regulations. Those which happened upon the going out of the old, and the coming in *203 of the new sheriff, required great attention. Formerly the office was held by a provost-marshal, during pleasure, who generally kept it a number of years, so that these inconveniences were seldom felt. But by our late constitutions there was an election every tzvo years, which occasioned a rapid succession in office j and, as there was a great accu-mutation of business, there was generally left in the hands of the old sheriff, a large arrearage unfinished and unexecu-ted. The old sheriffs generally retained the unfinished executions, as by law they might do, for a final settlement. And as pa} ment of debts was suspended, by a number of interfering laws, it was, frequently, many years before the business could be closed. At the same time, it was very difficult to know the state of the executions, and the security for payment of them ; and what rendered this difficulty greater, was, that every succeeding sheriff knew nothing of what had been done by his predecessor on these executions, but was totally isi the dark respecting- them. They often (as a consequence) seized property which had been bound by prior executions, of which they were not apprised until the hour of sale, while parties were obliged to apply to one, two, or three sheriff’s offices, in order to know the real state of the business. Add to this, also, that many of the old sheriffs, having gone out of office, were not very punctual,but often very inattentive to the remaining duties of itj and were not very alert in settling executions, which they knew they could retain and settle at their leisure. By this means, creditors were left in the dark respecting their debts, and the gentlemen of the bar, w ho conducted the business, were, themselves, unable to inform them. These, therefore, were some of the inconveniences that gave rise to the regulations which are the subject of the present debate; and the clause of the act upon which the plaintiff now founds his claim, and the subsequent one, which requires all sheriffs to make a return, on oath, of all executions, within ten days after the return day, were introduced,-in order to give consistency and despatch, regularity and certainty, in the she *204 riffs’ offices throughout the country; that every man, at one glance, might see the real situation of every execution in the state. And this brings me,
3dly. To consider the nature and extent of the remedy provided by this act.- The 1st clause establishes the powers of the different courts. The 2d fixes the time and places of holding them. The 3d describes the boundaries of the districts, and creates two new ones. The 4th defines the power of the judges. The 5th directs the mode of issuing executions. The 6th regulates the proceedings of the court. And the 7 th clause, which is the one now under consideration, prescribes the duty of the old sheriffs, upon going out of office, and the manner in which thet? shall turn over the business of the office to their successors. The first part of this clause relates to xvrits and process, and says, that they shall be turned over in the same manner as directed by the circuit court act of 17*69, which is a copy of 30 Geo. II. c. 37. The latter part of this clause goes one step further, and says, that all executions shall also be turned ever, where no actual sale of the property has been made. Here, then, for the first time in the history of our legal jurisprudence, are executions directed to be turned over to new sheriffs, in the same manner as writs and process, This controls the common law, and is introductory of a new law on the subject. This, then, is at once an answer to all the common láw authorities which have been cited on the ©ccasion. The 8th clause of the act goes on, and directs the mode and manner of return the sheriffs are to make of all executions into court. But, say the counsel for the defendant, although this 7th clause does alter and control the common law, with regard to turning over executions in future ; yet it shall not be construed to have a retrospective operation, as the defendant, Huger, was not in office when that law passed. I will only observe, here, that part of this clause will admit of this kind of construction, (if it were necessary to resort to it,) though the former part be doubtful, if or it says, “ all executions whereon he hath not made *205 lí actual sale of the property,” &c. I do not, however, con» ceive that there is any occasion for having recourse to this kind of retrospective construction. All the sheritts in this * o • p county, held their offices, under the late constitution, ror two years certain. This is not denied. No law could deprive them of this right, or alter the term ; it would have been unconstitutional. They held their offices for the time, as sacredly as the judges held their commissions during good behaviour. And this, it has been determined, neither the convention itself, nor the legislature, could interfere in. Taking this, then, for granted, let us see how the matter will stand. The late sheriffs were chosen towards the end of diarchy 1789, as may appear by the journals of the house ; of course they had a constitutional right to hold and exercise their offices until the end of the same day in March, 1791. Nothing could destroy this but a removal by impeachment. The present law passed the 19th of February, 1791, more than a month previous to the expiration of the old sheriffs’ offices ; of course, the present act found the defendant, Huger, in office; and if so, he is clearly bound by it.
The present law does not extend back to the first day of the session, because the 16th section, 1st article of our constitution, fixes that point. There is no occasion to put such a construction on it, as has been ably contended in the argument. The plaintiff, Osborne, it is agreed, was elected on the day the law passed, the 19th of February ¡ but did not qualify till the 16th of March following. But this election gave him no power to act, agreeably to the common law already observed upon j because it is there laid down by Lord Coke and many others, that the old sheriff still continues in office (though a new one is chosen) till the new one is sworn in ; “for it is the oath that com~ “fletes him in office.” The election only determined who should succeed the defendant, Huger. But the plaintiff, Osborne, had no right to enter on the duties of his office, even after the 16th of March, although sworn ; because the former had a constitutional right to exercise it until the *206 end of March, and the plaintiff was not regularly in office until the term expired. Upon the whole, therefore, I am of opinion, that Huger, the defendant, comes under the letter and spirit of the 7th clause of this act, and that he ought to turn over, not only all writs and process, but all executions also, to his successor, according to the terms of the law. As to its being an ex post facto lazo, there is no occasion to go into che consideración of it. To suppose that the supreme legislature of a sovereign country, has no right to regulate the conduct of its officers and the mode of business, would be straining the matter far indeed. With regard to the half commissions mentioned in the 10th clause of the instalment lazo, I conceive they are vested rights ; and the defendant had a power to receive them long ago from the debtors, with fees and charges ; and there is nothing in this clause which has or could deprive him of them. The proviso in the 10th clause of the in» stalment law, leaves an opening for the clause in the present law ; and one would think it had this part of the act in contemplation, by saying, that the half commissions received by the old sheriff, should not be paid to, but should be credited by, bis successor. And this division of fees be» tween old and new sheriffs, is not altogether novel. For by the 3d Geo. L c. 15. when any sheriff shall extend any goods to the use .of the king, and shall die, or be removed from office before a venditioni be awarded for sale, and a writ be awarded to a subsequent sheriff, who shall sell; the barons of the exchequer shall settle the fees and poundage between the old and the new sheriff, agreeably to the trouble each had in the execution of the process. Here it is not left to the judges to fix it, but it is ascertained by law. Having thus stated my reasons for differing from my brethren, I submit with respect to the opinions they have delivered on the subject.

Per Curiam.

Judgment for the ¿lefendanU